CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1915.

---

## THE STATE v. LEVI BOUSLOG, Appellant.

Division Two, November 30, 1915.

1. **EMBEZZLEMENT: Venue.** Where the defendant was charged with embezzling money, the undenied testimony of a witness that defendant told him that he received a check for $500 in one county and came to the county in which the indictment was found and there indorsed the name of the payee, at her direction, and cashed it, is sufficient, naught else appearing, to show that the venue was in the county in which the check was cashed.

2. ———: **Form: Check or Money: Variance.** Testimony by the defendant, charged with embezzling money, that the payee of a check for $500 instructed him to indorse her name upon it and to bring the balance of the money to her, and that he did indorse it and cash it, and the testimony of another witness that defendant admitted he had gotten $500 in money from the payee of the check, and of other witnesses that after he had cashed the check he failed to bring her $200 of the money received by him, is sufficient to sustain the charge of having embezzled money of said payee, and does not show an embezzlement of the check, and there is no such variance as invalidates a conviction.

3. ———: ———: ———: **Burden: Converting Check Into Money.** In view of such showing, the burden is not upon the State to go further and show the form of the property at the time or place defendant conceived the felonious intent to em-

266 Mo.] (73)

bezzle it. It is sufficient in order to sustain the charge of embezzling money, and to avoid a variance, to show that while the property of another was in the hands of the accused he changed or converted it into money which he failed to account for.

4. ———: Venue: Converting Check Into Money. And the venue where the charge is an embezzlement of money, is established by showing that accused converted a check into money·in the county in which the venue is laid, and converted that money, or a part of it, to his own use.

5. ———: Cross-Examination of Defendant: No Objection Except Immaterial. Any error in the cross-examination of defendant charged with embezzling money, by which it is made to appear that defendant profited to the extent of several thousand dollars by other transactions between him and the prosecuting witness and whereby she lost practically all she had, is not reviewable on appeal, if the only objection made to the testimony at the trial was that it was immaterial. Such an objection is utterly insufficient.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*George M. Jacques* for appellant.

(1) In a trial for embezzlement of money, admission of evidence tending to prove the embezzlement of any other property is error, and the admission of irrelevant or immaterial evidence which in its effects tends to injure the defendant in his material rights is error. (2) In a prosecution for embezzlement the State must show: first, that accused was an agent, servant, employee; second, that he received the money or other property in the course of his employment; third, that he received money or other property belonging to his principal; fourth, that he converted in county in which prosecuted the money or other property to his own use, with intent to steal and embezzle it. 15 Cyc. 497; Case v. State, 26 Ala. 17; Ex parte Hedley, 31 Cal. 108; Shelburn v. Com., 85 Ky. 173;

Com. v. Smith, 129 Mass. 104; State v. Adams, 108 Mo. 208; State v. Jennings, 98 Mo. 493; State v. Reilly, 4 Mo. App. 392. And in a prosecution for embezzlement the material allegations of the indictment or information must be proven as laid and the proof must correspond to the allegations of the indictment or information describing the money or property alleged to have been embezzled. 15 Cyc. 525; State v. Hanley, 70 Conn. 265; Weiner v. People, 186 Ill. 503; Com. v. Merrifield, 4 Metc. (Mass.) 468; State v. Schieb, 159 Mo. 130; State v. Dodson, 72 Mo. 283; Black v. State, 44 Tex. 620; State v. Hoshor, 26 Wash. 643. Nowhere in the evidence is it shown that the defendant received from the prosecuting witness lawful money of the United States in Jackson county, the nearest approach to this being the testimony of the witness Kilroy, and his testimony is that a check was received in Barton county and cashed in Kansas City, but evidence showing the embezzlement of a deed; draft, check or note does not support an information for the embezzlement of money. State v. Castleton, 255 Mo. 201; State v. Mispagel, 207 Mo. 559; State v. Wissing, 187 Mo. 106; State v. Crosswhite, 130 Mo. 366; State v. Dodson, 72 Mo. 283; Carr v. State, 104 Ala. 43; Lancaster v. State, 9 Tex. App. 393; People v. Leipsic, 62 Pac. 311; Com. v. Wood, 142 Mass. 459; People v. Meseros, 116 Pac. (Cal.) 679. Defendant's demurrer should have been sustained for the further reason that the venue was in Barton county. State v. Bacon, 170 Mo. 161; People v. Meseros, 116 Pac. (Cal.) 679. The information charges that while defendant was acting as the agent, clerk, collector and servant of the prosecuting witness, he did have, receive and take into his possession and under his care and control money to the amount of $200, the same being lawful money of the United States. To support this information the State must show that the defendant received of the prosecuting witness in Jackson county, the sum of $200

lawful money of the United States. This charge is not supported by proof of his receiving in Jackson county, of a deed to property in Barton county, or by proof of the receiving of a check which was afterward converted to the use of defendant. 15 Cyc. 525; State v. Schieb, 159 Mo. 130; State v. Mispagel, 207 Mo. 559; State v. Castleton, 255 Mo. 201; State v. Wissing, 187 Mo. 106; State v. Crosswhite, 130 Mo. 366; State v. Dodson, 72 Mo. 283; State v. Bacon, 170 Mo. 161; Carr v. State, 104 Ala. 43; Lancaster v. State, 9 Tex. App. 393; People v. Leipsic, 62 Pac. 311; Com. v. Wood, 142 Mass. 459.

*John T. Barker,* Attorney-General, and *Lewis H. Cook* for the State.

(1) No specific reason was assigned for the objections, but the objections throughout the trial were general in their character and did not acquaint the trial court with the reasons assigned therefor. Specific grounds of objections must be made at the trial in order to make the rulings of the trial court reviewable. State v. Goddard, 162 Mo. 198; State v. Lovell, 138 S. W. 623; State v. Miles, 199 Mo. 559. (2) It is for the jury to settle any conflict in the testimony, and although the verdict convicts the defendant of embezzlement by agent, yet if the evidence is substantial the Supreme Court will not disturb the verdict on the ground that it is insufficient or that it is against the weight of the evidence. State v. Rumfelt, 228 Mo. 443; State v. Miller, 188 Mo. 379; State v. McGee, 188 Mo. 409; State v. Leabo, 89 Mo. 255. (3) The defendant being the agent of Mrs. McClintock in securing this loan was vested with authority to cash this check, but in appropriating the money realized therefrom to his own use, he was guilty of embezzlement. The check was cashed in Kansas City, Jackson county, and the venue is established. A convincing and full answer es-

tablishing the venue is found in the testimony of Kilroy. State v. Bacon, 170 Mo. 162; State v. Mispagel, 207 Mo. 575. (4) The only witness called in behalf of the defense was the defendant, who admitted on the stand that he received a check for $500, for which he gave a warranty deed signed in blank by the complaining witness. These matters were submitted by the court, under proper instructions, to the jury, and the jury, having considered the evidence, found the defendant guilty as charged. Their finding will not be disturbed, as there is substantial evidence to support their verdict. State v. Sassman, 214 Mo. 738; State v. Shelton, 223 Mo. 141; State v. Wooley, 215 Mo. 687; State v. Sharp, 223 Mo. 295.

FARIS, P. J.—Defendant was tried in the criminal court of Jackson county upon the charge of embezzlement. The jury found him guilty and fixed his punishment at imprisonment in the penitentiary for a term of two years. From this conviction, after making the conventional motions, he has appealed.

The facts are brief and so far as they are material in the illumination of the points discussed in the opinion, run thus: Defendant was engaged in the real estate business in Kansas City. He had certain dealings in real estate with one Mrs. Edith McClintock, who is the prosecuting witness in the case, by which defendant acquired from Mrs. McClintock certain farms in Nebraska and at Polo, Missouri, and certain town property at Excelsior Springs, and Mrs. McClintock acquired from defendant a farm in Barton county, Missouri. All of this property seems to have been very heavily encumbered with mortgages. In addition to the property exchanged by Mrs. McClintock with defendant for the Barton county farm, the former owned a house and lot in Excelsior Springs which was encumbered for $1200, upon which encumbrance the holders were threatening foreclosure. The Clay

County Bank, with which Mrs. McClintock had dealings, was willing to take over this encumbrance, but was unwilling to take this latter property for the security of the full amount of the $1200 encumbrance and insisted that the amount thereof should be reduced to $800. Being unable otherwise to obtain this sum of $400, Mrs. McClintock arranged with defendant to obtain this money for her on the Barton county farm, the defendant representing to her that he could get from five to seven hundred dollars on Mrs. McClintock's equity in this farm if she would execute a blank warranty deed therefor to be put up, as defendant expressed it, "in escrow." Sometime about the latter end of the year 1910 or the beginning of 1911, Mrs. McClintock executed and acknowledged a warranty deed to the Barton county farm, leaving the name of the grantee therein blank. Upon this warranty deed, defendant, sometimes in the early days of March, 1911, obtained $500. Subsequently and on March 10, 1911, he paid to the Clay County Bank $300 on the sum of $400 which the bank demanded of Mrs. McClintock as a condition precedent to its taking up the $1200 loan on her Excelsior Springs property. Defendant at the time claimed that the $300 was advanced by him out of his own money. The balance of the $500 procured by defendant through the use of the warranty deed on the Barton county farm, was never paid by him to Mrs. McClintock. Mrs. McClintock did not learn that defendant had used the warranty deed until the Barton county farm was lost to her, defendant having obtained the money on an agreement to re-pay the same within ninety days.

The proof shows that the check for the sum of $500 in question was payable to Mrs. McClintock, and that defendant, according to his own admissions upon the trial, indorsed such check by request of Mrs. McClintock and collected it in Kansas City, Missouri.

Defendant admitted obtaining the check for the sum of $500 by the means set out above, but contends that in addition to the $300, which it is conceded he paid to Mrs. McClintock, and which was used in reducing the encumbrance on the Excelsior Springs property, he paid her in cash the further sum of $200. He also contends that he paid certain interest on encumbrances on the property she traded to him and which she admits she agreed to pay, and that he paid the sum of $100 to obtain the extension of the ninety-day redemption period on the Barton county farm. All these latter contentions are denied, however, by Mrs. McClintock. The record is obscure and unsatisfactory, but to eke it out so far as it is possible, its condition considered, reference will be made in the opinion to further facts.

## OPINION.

The only questions so raised as to challenge our attention as matters of law, are (a) that the venue was not shown to be in Jackson county, and (b) that there was such a variance in the proof as to the nature of property embezzled as to be fatal to a conviction, in that he was charged with embezzling money, and the proof shows, as defendant contends, he embezzled either a warranty deed or a check. Both of these questions are discussed in the case of State v. Mispagel, 207 Mo. 557, which it is strenuously contended settles this case in favor of defendant. We do not think this is true whether (and the State urges us to re-examine it if it be apposite) the Mispagel case be correctly ruled or not. We reach this view upon the uncontradicted facts. One Kilroy, a witness for the State, testified that defendant told the witness that "he [defendant] got the $500 check at Butler, then came to Kanas City. . . . He had the $500 here in Jackson county and cashed the

*Venue and Variance.*

check here.'' There is no denial of the above statement. We hold that this statement was sufficient, naught else appearing, to show that the venue was properly laid in Jackson county.

Upon the other contention, that of variance, the testimony of the witness Kilroy shows that defendant admitted that he had gotten $500 in money from Mrs. McClintock. But that is not all. The defendant testifying for himself and in answer to questions from his own counsel, says: ''Q. This check [the check in controversy] that Mr. Jones gave you was for $500? A. Yes, sir. Q. Who was that made payable to? A. Payable to Mrs. McClintock. I called her up and told her I had it and I wanted her to indorse it. She said, 'Put my name on it,' and said for me to bring the balance of the money to her.''

The whole case shows, if the witnesses for the State are to be believed—and the question of credibility is not for us, but for the triers of fact—that defendant was the agent of Mrs. McClintock to use the warranty deed and thereby to obtain this loan. He admits that she expressly made him her agent to indorse the check and bring her the money. He did indorse it and cash it, but other proof in the case shows he failed to bring her $200 of the money. If the jury believed this, and the sequel indicates that they did, it was, other jurisdictional and evidentiary matters being shown, sufficient to sustain the conviction.

The facts of the instant case regarded, we do not see wherein the case falls foul of the rule announced in the Mispagel case, and so see no reason to re-examine that case at this time. For according to defendant's own admissions to the witness Kilroy and when testifying for himself, he indorsed this check at the request of the prosecuting witness who was the payee therein, and having so endorsed it ''cashed'' it, i. e., turned it into money; and this was the *form* of it when he failed to account to Mrs. McClintock for it.

So we say the burden is not and ought not to be put upon the State after such showing, to go further and show the form of the property at the time or place at which defendant conceived the felonious intent to embezzle it. It is sufficient in order to sustain the charge of embezzlement of money, upon the phase of avoiding a variance, to show that while the property of another was in the hands of the accused he changed or converted it into money which he failed to account for, and upon the phase of venue, that he did this in the county in which the venue is laid. If the rule were otherwise it would be well-nigh impossible to sustain convictions in fully half of the cases. There may be other means of avoiding a variance. We will rule them as we reach them. One other, we may pause to recommend to the prosecuting attorneys, would be to charge the embezzlement in as many counts as there are forms which the embezzled property assumed while the accused had it in his hands.

The cross-examination of defendant took a wide range, and some of it, which elicited facts as to other real estate transactions between defendant and Mrs.

Cross-Examination of Defendant: Other Transactions. McClintock, by which it was made to appear that defendant profited thereby to the extent of some four thousand dollars, and that Mrs. McClintock lost practically all she had, may well have hurt defendant's case before the jury. However, the only objection made by defendant was that this evidence was immaterial. It needs no reiteration of cited cases to show the utter insufficiency of such an objection. So we disallow the general assignment of error within which this point falls and place it in that large category of cases, rarely mentioned by press or populace, but nevertheless numerous, in which the State is saved a reversal by a technicality.

266Mo.6

We have carefully gone over this record and find no error saved which is meet for reversal, we must needs therefore affirm it. Let this be done. All concur.